## THE ALICE.

(District Court, S. D. New York. December 5, 1907.)

TOWAGE—INJURY TO TOW AT PIER—LIABILITY OF TUG.

A tug *held* not liable for the injury of a scow and loss of her cargo by her overturning while moored to a bulkhead on Harlem river; the evidence showing that the tug, which had her in tow, left her at the place directed, which was ordinarily safe, and with sufficient depth of water, and that the accident was in no way due to any fault on the part of the tug.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Towage, § 23.]

In Admiralty.  Suit against tug for injury to tow.

John F. Foley, for libellants.
Alexander & Ash, for claimants.

ADAMS, District Judge.  This action was brought by Bernard Campbell and William Reinhart, the owners of the scow M. F. Cosgrove and its cargo of manure, against the tug Alice, to recover for the damages sustained by the scow and the loss of the cargo through the upsetting of the scow in the Harlem River, at a bulkhead above 112th Street, during the night of the 1st of September, 1903.  The fault alleged is that the tug being employed to tow the scow to 112th Street, instead of leaving her there, left her "at an unfinished bulkhead, in an unsafe, perilous and dangerous berth" causing a loss of $773.86.  The claimants of the tug admit that it was hired to tow the scow and cargo to the bulkhead above 112th Street, and allege that she did tow the scow to the place designated and left her in a safe and proper berth selected by her master.  They further allege that the damages were caused, not through any fault of the tug, but by the neglect of the crew of the scow to properly attend to her.

The testimony shows that on the afternoon of the day in question the Alice was engaged to tow the scow from the foot of 25th Street, South Brooklyn, to the bulkhead above 112th Street.  She took the scow in tow on two short hawsers and arrived off 110th Street between 6 and 6:30 o'clock p. m. where she put her on her own port side for the purpose of placing her in her berth.

The City of New York at the time was finishing Jefferson Park, which extended along the river from 110th to 114th Street, and the cargo of the scow was to be used in fertilizing the land.  At the foot of 112th Street, there was a pier known as the Recreation Pier, and moored to its northerly side was a floating bath-house about 30 feet wide and lying so near the bulkhead that there was not room for an ordinary vessel to lie between its inshore end and the bulkhead.  When the park improvements commenced there was a slip at the foot of 113th Street and another at 114th Street, extending inward from the line of the bulkheads to the respective streets.  In the course of the improvements the 113th Street slip was filled in and a new bulkhead constructed on the line of the old ones extending northward from 112th Street to the line of the southerly side of 114th Street.  This was the condition of the premises at the time the Cosgrove was taken there.

The Alice intended to berth the Cosgrove at the bulkhead just north of the upper side of the bath-house but on approaching that locality a man on the bulkhead called out that the place was needed for the purpose of unloading a stone scow which was expected, and asked that the Cosgrove be moved to the northward in order to leave room for the stone scow.  The master of the Cosgrove then requested the master of the Alice to move accordingly; the tug placed the scow somewhat farther up, and having done so, asked the master of the Cosgrove if he was all right, to which the latter replied in the affirmative.  The lines were then made fast and the tug left.  The

tide at the time was high water slack. During the night the Cosgrove turned over on her side, outward from the bulkhead, and dumped her cargo.

The libellants claim that the tug left the scow in a berth to which she was not consigned and in consequence she met with the accident by reason of an insufficiency of water in which to float and is, therefore, liable for the damage she received. The claimants contend that the tug left the scow in a berth to which she was directed, which was perfectly safe, and that the accident happened through the neglect of the scow's master to properly care for her during the night.

A contested question in the case is where the scow was left, the libellants contending that it was near 114th Street and the claimants that it was 50 to 60 feet to the northward of the bath-house.

The upper part of the bulkhead at the time was unfinished and it is very unlikely that the boat would have been left there. Some of the libellants' witnesses testified that they knew it was quite near 114th Street, because of the proximity of a sewer at that place, when, in fact, there was no sewer there, 115th Street being the nearest place at which there was a sewer. All the witnesses from the tug said that the scow was left from 50 to 100 feet north of the pier, which would not bring her near 114th Street. Their testimony is confirmed by the foreman in charge of the park improvements, who said that he found her lying the morning after she arrived about 75 feet north of the pier. Another outside witness was the master of the tug Dewey, who followed the Alice up the river, and the next morning saw the scow lying on her side, about 100 feet north of the pier.

The preponderance of the testimony, as well as the probabilities, shows that the claimants' contention is correct and such being ascertained, it leaves little more to be said in the matter. When the tug took the tow to a place where she was directed, especially when that place was an ordinarily safe one, and shown to be such by the Government chart, as was the case here, she performed her duty and was not responsible for what occurred subsequently. The fact that the scow was afterward overturned does not show that deficient water was the cause. There having been ample water, the conclusion to be reached from the accident is more consistent with neglect of the master to watch his boat on the receding tide and be careful that her lines were sufficient to allow her ample moving room, than with any fault on the tug's part.

Libel dismissed.